IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

DONALD C. PATTERSON,            1:12-cv-01053-MA

        Plaintiff,            OPINION AND ORDER

    v.

COMMISSIONER SOCIAL SECURITY
ADMINISTRATION,

        Defendant.

KATHRYN TASSINARI
Harder, Wells, Baron & Manning, P.C.
474 Willamette Street, Suite 200
Eugene, Oregon 97401

    Attorney for Plaintiff

S. AMANDA MARSHALL
United States Attorney
ADRIAN L. BROWN
Assistant United States Attorney
1000 S.W. Third Avenue, Suite 600
Portland, Oregon 97204-2902

ERIN F. HIGHLAND
Special Assistant United States Attorney
Office of the General Counsel
Social Security Administration
701 Fifth Avenue, Suite 2900, M/S 221A
Seattle, Washington 98104-7075

    Attorneys for Defendant

1 - OPINION AND ORDER

MARSH, Judge

Plaintiff, Donald C. Patterson, brings this action for judicial review of a final decision of the Commissioner of Social Security (the Commissioner) denying his application for disability insurance benefits (DIB) under Title II of the Social Security Act (the Act). See 42 U.S.C. §§ 401-434. This court has jurisdiction pursuant to 42 U.S.C. § 405(g). For the reasons set forth below, I affirm the final decision of the Commissioner.

## PROCEDURAL BACKGROUND

Plaintiff filed a prior application for DIB in April of 2008, alleging disability beginning October 13, 2006. That claim was denied initially and, on March 13, 2009, upon reconsideration. Plaintiff did not seek further review of that decision.

Plaintiff then protectively filed the instant application for DIB on June 14, 2009, alleging the same onset date and disability due to:

> Back injury, Neck injury, Numbness in leg, Numbness in arm 5 to 6 ruptured or bulging disks, that give a constant pain and discomfort. Cannot sit stand or lay for an extended amount of time. I pain 24-7. Some days are worse than others. A lot of back spasms and numbness through out the extremities. Neck and back illness[.]

Tr. 143 (errors in original). The claim was denied initially and upon reconsideration. A hearing was held before an Administrative Law Judge (ALJ) on July 27, 2011, at which plaintiff was represented by counsel and testified. In addition, vocational

expert (VE) Glee Ann L. Kehr was present throughout the hearing and testified. Tr. 27-44.

On August 10, 2011, the ALJ issued a decision denying plaintiff's application. After the Appeals Council denied review, plaintiff timely appealed.

## FACTUAL BACKGROUND

Born on January 14, 1964, plaintiff was 42 years old on the alleged onset date of disability and 47 years old on the date of the hearing. Plaintiff has a tenth grade education, and past relevant work as a truck driver.

Plaintiff alleges his disabilities became disabling on October 13, 2006. In addition to his hearing testimony, plaintiff submitted an Adult Function Report. Tr. 154-61. Plaintiff's wife, Brenda Lee Patterson, submitted a Third Party Function Report. Tr. 162-69.

As relevant to this case, Robin Rose, M.D., examined plaintiff and submitted an evaluation. Tr. 521-35. Mary L. Hagood, a family nurse practitioner that was one of plaintiff's primary care providers, also submitted a letter. Tr. 489.

## THE ALJ'S DISABILITY ANALYSIS

The Commissioner has established a five-step sequential process for determining whether a person is disabled. Bowen v. Yuckert, 482 U.S. 137, 140-42 (1987); 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v). Each step is

3 - OPINION AND ORDER

potentially dispositive. The claimant bears the burden of proof at Steps One through Four. Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999). The burden shifts to the Commissioner at Step Five to show that a significant number of jobs exist in the national economy that the claimant can perform. See Yuckert, 482 U.S. at 141-42; Tackett, 180 F.3d at 1098.

At Step One, the ALJ determined that plaintiff has not engaged in substantial gainful activity since the date of the previous disability determination, March 13, 2009. See 20 C.F.R. §§ 404.1571 et seq.; Tr. 12.

At Step Two, the ALJ determined that plaintiff's degenarative disc disease of the lumbar and cervical spine, status post hernia repair surgery, and chronic pain syndrome are severe impairments. See 20 C.F.R. § 404.1520(c); Tr. 12.

At Step Three, the ALJ determined that plaintiff does not have an impairment or combination of impairments that meet or medically equal any listed impairment. See 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526; Tr. 12.

The ALJ found that plaintiff has the residual functional capacity (RFC) to perform light work, except that plaintiff can only occasionally climb stairs or ramps and can never climb ladders, ropes, or scaffolds; can do no more than frequent balancing, and occasional stooping, kneeling, crouching, or crawling; can have no exposure to hazards such as unprotected

4 - OPINION AND ORDER

heights or dangerous moving machinery; and can engage in no more than occasional overhead reaching bilaterally. Tr. 13-16.

At Step Four, the ALJ found that plaintiff is unable to perform any past relevant work. See 20 C.F.R. § 404.1565; Tr. 16.

At Step Five, however, the ALJ found that jobs exist in significant numbers in the national economy that plaintiff can perform, including Machine Feeder, Office Helper, and Cashier. See 20 C.F.R. §§ 404.1569, 404.1569(a); Tr. 17-18.

Accordingly, the ALJ found that plaintiff was not disabled within the meaning of the Act.

## ISSUES ON REVIEW

Plaintiff raises four issues on appeal. First, plaintiff argues that the ALJ improperly discredited his testimony. Second, plaintiff asserts that the ALJ improperly rejected Dr. Rose's evaluation. Third, plaintiff maintains that the ALJ erred in rejecting the opinion of Ms. Hagood, plaintiff's family nurse practitioner. Fourth, plaintiff argues that the ALJ erred in silently rejecting Ms. Patterson's lay opinion. Accordingly, plaintiff concludes that the ALJ failed to carry his burden of demonstrating plaintiff is capable of performing other work at Step Five.

## STANDARD OF REVIEW

The court must affirm the Commissioner's decision if the Commissioner applied proper legal standards and the findings are

5 - OPINION AND ORDER

supported by substantial evidence in the record. 42 U.S.C. § 405(g); Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995). "Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Andrews, 53 F.3d at 1039. The court must weigh all of the evidence, whether it supports or detracts from the Commissioner's decision. Martinez v. Heckler, 807 F.2d 771, 772 (9th Cir. 1986). If the evidence is susceptible to more than one rational interpretation, the Commissioner's decision must be upheld. Andrews, 53 F.3d at 1039-40. If the evidence supports the Commissioner's conclusion, the Commissioner must be affirmed; "the court may not substitute its judgment for that of the Commissioner." Edlund v. Massanari, 253 F.3d 1152, 1156 (9th Cir. 2001).

## DISCUSSION

### I. Plaintiff's Testimony

In deciding whether to accept subjective symptom testimony, an ALJ must perform two stages of analysis. 20 C.F.R. § 404.1529. First, the claimant must produce objective medical evidence of an underlying impairment that could reasonably be expected to produce the symptoms alleged. Smolen v. Chater, 80 F.3d 1273, 1281-82 (9th Cir. 1996). Second, absent a finding of malingering, the ALJ can reject the claimant's testimony about the severity of his symptoms

only by offering specific, clear, and convincing reasons for doing so. Id. at 1281.

If an ALJ finds that the claimant's testimony regarding his subjective symptoms is unreliable, the "ALJ must make a credibility determination citing the reasons why the testimony is unpersuasive." Morgan v. Comm'r Soc. Sec. Admin., 169 F.3d 595, 599 (9th Cir. 1999). In doing so, the ALJ must identify what testimony is credible and what testimony undermines the claimant's complaints, and make "findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit [the] claimant's testimony." Thomas v. Barnhart, 278 F.3d 947, 958 (9th Cir. 2002). The ALJ may rely upon ordinary techniques of credibility evaluation in weighing the claimant's credibility. Tommasetti v. Astrue, 533 F.3d 1035, 1039 (9th Cir. 2008).

At the hearing, plaintiff testified that his disabilities were originally caused by two workplace motor vehicle accidents. Tr. 30-31. Plaintiff reported that he has significant side effects from his pain medication, including confusion and nausea. Tr. 35. Plaintiff testified that the pain in his back and chest sometimes causes difficulty walking. Tr. 36. Plaintiff estimated that he has good days with less pain only one or two days out of every ten. Id. On good days, plaintiff reported trying to walk and help with chores around the house. Tr. 36-37. On bad days, however, plaintiff testified that he spends much of his time lying down in

7 - OPINION AND ORDER

his bedroom. Tr. 37-38. Plaintiff additionally stated that he gets leg cramps at night, and that walking for five or ten minutes can cause leg pain. Tr. 38-39. Plaintiff reported that two weeks before the hearing he took his children fishing and sat by the car while they fished from a river bank. Tr. 39-40.

In his Adult Function Report, plaintiff reported that his daily routine is to wake up, take pain medication, and wait for it to take effect. Tr. 154. Plaintiff will then try to get dressed and drink a cup of coffee before watching the news on television. Id. Depending on his level of pain, plaintiff will try to take a short walk and help around the house. Id. Plaintiff has to lay down throughout the day and must occasionally change positions for comfort. Id. Plaintiff reported that he only gets around four hours of sleep per night between doses of pain medication, it takes him an hour to get dressed, and he sometimes needs help bathing. Tr. 155. Plaintiff wrote that when going out, he can walk, drive, or ride in a car, and can usually do so alone. Tr. 157. Plaintiff stated that he goes grocery shopping for thirty minutes once or twice per month, and that his children usually accompany him. Id.

As for his hobbies, plaintiff reported that he used to enjoy fishing, hunting, baseball, cooking, and camping, but that his conditions substantially interfere with his ability to participate in those activities. Tr. 158. Plaintiff stated that his pain makes him "moody" and interferes with his social life. Id.

8 - OPINION AND ORDER

Plaintiff checked that his conditions affect his abilities to lift, squat, bend, stand, reach, walk, sit, kneel, climb stairs, complete tasks, concentrate, follow instructions, and use his hands. Tr. 159. Plaintiff reported he can only walk 100 feet before needing rest. Id.

The ALJ rejected plaintiff's testimony because his activities of daily living are inconsistent with his allegations of disabling limitations, and plaintiff's alleged limitations were inconsistent with medical evidence. I conclude that these reasons, taken together, constitute clear and convincing reasons for discrediting plaintiff's testimony.

The ALJ's finding that plaintiff's daily activities are inconsistent with his alleged limitations is amply supported by the record. Significantly, and as the ALJ noted, on July 7, 2010, plaintiff told Dr. Mark M. Huth, a cardiologist, that "[h]e is very physically active and still continues to work on his ranch." Tr. 447. Plaintiff made this report despite discussing his back problems with Dr. Huth. Id. The high level of physical activity plaintiff reported to Dr. Huth is irreconcilable with the sedentary lifestyle plaintiff described in his testimony and provides compelling support for the ALJ's credibility determination. In addition, the ALJ reasonably noted that plaintiff's testimony of sitting while accompanying his children on a fishing trip and watching his family on regular bowling outings is inconsistent with

9 - OPINION AND ORDER

his report that he is limited in the amount he can sit. Tr. 14, 39-40, 158-59. The ALJ properly discredited plaintiff's testimony because his reported activities are inconsistent with his allegations of severe limitations.

The ALJ's finding that the medical record is inconsistent with plaintiff's alleged limitations is also supported by the record in several respects. First, Dr. Coehlo reviewed plaintiff's back MRIs from 2007 and 2009, and concluded that they were "normal and age appropriate." Tr. 443. Indeed, the MRIs of plaintiff's thoracic, cervical, and lumbar spine taken on August 19, 2009 produced findings that were largely normal, with only occasional mild or mild-to-moderate findings. Tr. 397-99. Although plaintiff reported decreased sensitivity to pinprick in the back of his left arm, pinky, ring finger, and right big toe to Physician Assistant Chenelle McCaskill on July 30, 2008, a follow up nerve conduction study a week later revealed, other than an "absent sural sensory study, there were no other findings to substantiate the presence of a diffuse polyneuropathy." Tr. 354-55.

In addition, plaintiff's physicians consistently made conservative treatment recommendations, including physical therapy and pain medication, but never more aggressive treatment of plaintiff's back problems. After an extensive neurological evaluation that included MRIs, Steven Nagelberg, M.D., found "nothing here that suggests the need for surgical intervention,"

10 - OPINION AND ORDER

and recommended a chronic pain management program as well as acupuncture. Tr. 312-13. Dr. Coehlo also recommended that plaintiff "become involved in a chronic behavioral pain program with a goal of self-management through conservative means." Tr. 444. Finally, as the ALJ noted, Dr. Coehlo and Robert Patterson, P.A.C., recommended that plaintiff avoid or decrease his use of narcotic pain medications. See Tr. 419-21, 441-45. On the whole, the medical record contains no consideration of aggressive treatment consistent with plaintiff's severe limitation allegations.

The medical record also contains instances of medical providers questioning the accuracy of plaintiff's reporting. In his evaluation, Dr. Nagelberg noted that plaintiff "is a poor historian." Tr. 295. As the ALJ noted, Dr. Coehlo was more forceful, stating that "I feel that [plaintiff] and his spouse are in a vicious loop of pursuing medical diagnosis in hopes of a 'home run.' However, I think unfortunately this is becoming a fool's errand and I explained this to both the patient and his spouse." Tr. 444. Ultimately, the ALJ's finding that the medical record is inconsistent with plaintiff's allegations of severe limitations caused by back problems is reasonable. I conclude that these reasons, taken together, constitute clear and convincing reasons to reject plaintiff's testimony.

///

11 - OPINION AND ORDER

## II. Rejection of Dr. Rose's Opinion

Plaintiff next argues that the ALJ erroneously weighed the medical testimony. The Commissioner must provide clear and convincing reasons to reject the uncontradicted opinion of a treating or examining physician. Lester, 81 F.3d at 830-31. Where a physician's opinion is contradicted by that of another physician, the ALJ may reject the physician's opinion by providing specific and legitimate reasons supported by substantial evidence in the record. Id. "'The ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings.'" Chaudhry v. Astrue, 688 F.3d 661, 671 (9th Cir. 2012) (quoting Bray v. Comm'r Soc. Sec. Admin., 554 F.3d 1219, 1228 (9th Cir. 2009)). "'Where . . . the record contains conflicting medical evidence, the ALJ is charged with determining credibility and resolving the conflict.'" Id. (quoting Benton v. Barnhart, 331 F.3d 1030, 1040 (9th Cir. 2003)). The ALJ is responsible for translating the claimant's medical conditions into functional limitations in the RFC. See Stubbs-Danielson v. Astrue, 539 F.3d 1169, 1174 (9th Cir. 2008). Ultimately, the RFC is sufficient if it is "consistent with restrictions identified in the medical testimony." Id.

After examining plaintiff and reviewing his medical records, Robin Rose, M.D. opined that plaintiff could only stand and walk

12 - OPINION AND ORDER

for two hours out of an eight-hour workday with breaks every 15 minutes, and sit for three hours out of an eight-hour workday with breaks every 30 minutes for position change. Tr. 533. Dr. Rose opined that plaintiff could lift five pounds frequently and 10 pounds occasionally; could occasionally climb stairs and ramps, but never ropes, ladders, or scaffolds; and had "compromised" ability to balance, could rarely stoop, and never kneel, crouch, or crawl. Tr. 533-34. Dr. Rose found several manipulative limitations based on the radiculopathy associated with plaintiff's chronic back pain. Tr. 534. Finally, Dr. Rose described several environmental limitations based on plaintiff's prior exposure to chemicals and narcotic pain medication. Id.

Dr. Rose's opinion was inconsistent with those of reviewing physicians Drs. Pritchard and Westfall. Thus, the ALJ was required to cite specific and legitimate reasons, supported by substantial record evidence to reject Dr. Rose's opinion. Lester, 81 F.3d at 830-31. The ALJ rejected Dr. Rose's opinion because it was inconsistent with the remainder of the medical record and because plaintiff was referred to Dr. Rose by her attorney. I conclude that the ALJ's citation of inconsistency with the medical record is a specific and legitimate reason, supported by substantial evidence, to reject Dr. Rose's opinion.

Dr. Rose's opinion is inconsistent with the medical record in a number of respects. First, as the ALJ noted, Dr. Rose's findings

13 - OPINION AND ORDER

of reduced strength in plaintiff's extremities and limitations in gross and fine motor skills are inconsistent with the findings of Andrew Nemecek, M.D. Compare Tr. 435-37 with tr. 531-32. Although Dr. Nemecek's examination took place approximately one year before Dr. Rose's, there is little in the intervening medical record to explain the difference in their findings. On October 25, 2010, Ms. Hagood noted that plaintiff had full strength and normal neurological sensation. Tr. 454. On January 4, 2011, plaintiff reported to Ms. Hagood that his back and chronic pain feel better as a result of weight loss. Tr. 451. On March 15, 2011, in discussing plaintiff's back and radicular pain, Harvey Hwang, M.D., reported that "we do know that [plaintiff] has done better on a TENS unit." Tr. 483. The ALJ reasonably cited this inconsistency.

In addition, Dr. Rose does not explain her findings of "diffuse pain in all areas" and significant radiculopathy in light of Dr. Boggs's finding that there were "no electromyographic abnormalities . . . discovered to support the presence of right-sided lumbar radiculopathy . . . or left-sided cervical radiculopathy." Compare Tr. 529-34 with Tr. 355. Nor does Dr. Rose's opinion account for the generally modest findings in the imaging of plaintiff's back. See Tr. 397-99. Finally, Dr. Rose's findings and conclusions are irreconcilable with plaintiff's July 7, 2010 report to Dr. Huth that he is "very physically active and still continues to work on his ranch." Tr. 447. The ALJ's

14 - OPINION AND ORDER

rejection of Dr. Rose's opinion due to inconsistency with the medical record is supported by substantial evidence, and is a specific and legitimate reason to discredit her opinion.[1]

### III. Ms. Hagood's Opinion

Mary L. Hagood, a family nurse practitioner, also submitted a letter on plaintiff's behalf. As a nurse practitioner, Ms. Hagood is an "other source" whose opinion may only be rejected if the ALJ cites reasons germane to the witness. See 20 C.F.R. § 404.1513(d); Molina v. Astrue, 674 F.3d 1104, 1111 (9th Cir. 2012). I conclude that the ALJ did so.

Ms. Hagood submitted a letter on March 29, 2011, stating that plaintiff is frequently uncomfortable during visits and always presents some level of restlessness due to pain. Tr. 489. Ms. Hagood stated that plaintiff's condition is "capable of causing all of these symptoms, and his symptoms support the objective medical findings." Id. While acknowledging that disability was not her specialty, Ms. Hagood opined that plaintiff could not "sustain any type of job." Id.

The ALJ rejected Ms. Hagood's opinion because other treatment providers disagreed with her course of treatment, and Ms. Hagood's opinion did not identify any clinical findings upon which it

---

[1] Because I find the ALJ's first reason for rejecting Dr. Rose's opinion sufficient, I need not consider the ALJ's citation to the fact that Dr. Rose was retained by plaintiff's counsel.

15 - OPINION AND ORDER

relied. Tr. 15-16. As the ALJ noted, both Dr. Coehlo and Mr. Patterson recommended that plaintiff be treated without narcotic pain medication. Tr. 419-21, 444-45. Nonetheless, Ms. Hagood consistently treated plaintiff with narcotic pain medication. Tr. 452, 455, 458, 459-60, 462, 464, 468, 473. The ALJ's second cited reason is even more convincing. The ALJ was correct that Ms. Hagood did not support her findings with any particular clinical findings. Ms. Hagood's failure to cite to clinical findings in her opinion is especially important in light of the inconsistencies in the medical record discussed above, including that plaintiff's imaging consistently revealed normal or modest objective findings. See Tr. 355, 397-99. I conclude that these are reasons germane to Ms. Hagood to reject her opinion.

## IV. Brenda Lee Patterson's Opinion

Lay testimony regarding a claimant's symptoms or how an impairment affects her ability to work is competent evidence that an ALJ must take into account. Molina v. Astrue, 674 F.3d at 1114. To discount lay witness testimony, the ALJ must give reasons that are germane to the witness. Id. Ms. Patterson submitted a Third Party Function Report that was almost identical to that which plaintiff submitted.[2] Compare Tr. 162-69 with Tr. 154-61. The ALJ did not discuss Ms. Patterson's opinion. This error was harmless,

---

[2] I note both forms were completed by Ms. Patterson. Tr. 161, 169. Substantial portions of the two forms are identical.

however, because the functional limitations described by Ms. Patterson were materially identical to those described in Mr. Patterson's Adult Function Report. As discussed above, the ALJ gave proper reasons for rejecting Mr. Patterson's testimony, and those reasons apply with equal force to Ms. Patterson's materially identical testimony. Accordingly, the ALJ's error in failing to discuss Ms. Patterson's opinion was harmless. See Molina, 674 F.3d at 1114-22.

Because I find that the ALJ properly discredited plaintiff's testimony, the opinions of Dr. Rose and Ms. Hagood, and Ms. Patterson's testimony, I reject plaintiff's argument that the ALJ failed to carry his burden at Step Five.

## CONCLUSION

For the foregoing reasons, the decision of the ALJ is AFFIRMED.

IT IS SO ORDERED.

DATED this 9 day of July, 2013.

/s/ Malcolm F. Marsh
Malcolm F. Marsh
United States District Judge

17 - OPINION AND ORDER